UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DIONISIO MOJICA,

                            Plaintiff,

v.

GEORGE MURPHY, Sgt., Great Meadow                    9:17-CV-0324
Correctional Facility, formerly known as             (DNH/ML)
John Murphy; CHARLES SHARROW,
Correctional Officer, Great Meadow
Correctional Facility, formerly known as
John Sharrow; C.O. B. COSEY, Great
Meadow Correctional Facility, formerly
known as John Doe #1,

                            Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

DIONISIO MOJICA
   Plaintiff, *Pro Se*
Sullivan Correctional Facility
Box 116
Fallsburg, New York 12733

LETITIA A. JAMES                                     KEITH J. STARLIN, ESQ.
Attorney General for the State of New York           Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## <u>ORDER and REPORT-RECOMMENDATION</u>

This matter has been referred to me for a Report and Recommendation by the Honorable

David N. Hurd, United States District Judge.  Currently before the Court, in this civil rights

action filed by Dionisio Mojica ("Plaintiff") against (a) George Murphy, Lieutenant,[1] Great

Meadow Correctional Facility, formerly known as John Murphy, (b) Charles Sharrow,

Correctional Officer, Great Meadow Correctional Facility, formerly known as John Sharrow, and

(c) C.O. B. Cosey, Great Meadow Correctional Facility, formerly known as John Doe #1

(collectively "Defendants"), are (1) Defendants' motion for summary judgment pursuant to Fed.

R. Civ. P. 56 (Dkt. No. 66), and (2) Plaintiff's motion to amend the Complaint pursuant to Fed.

R. Civ. P. 15 (Dkt. No. 88).  For the reasons set forth below, I recommend that Defendants'

motion for summary judgment be denied and I deny Plaintiff's motion to amend.

---

[1]    On July 21, 2017, United States Magistrate Judge David E. Peebles ordered that "John Murphy, Sergeant" be amended on the docket to "George Murphy, Lieutenant."  (Dkt. No. 20.) The Clerk of the Court is directed to correct the docket accordingly.

**TABLE OF CONTENTS**

I.    RELEVANT BACKGROUND ........................................................................................ 1

   A.    Plaintiff's Claims ................................................................................................... 1

   B.    Procedural History ................................................................................................ 1

   C.    Statement of Undisputed Material Facts ............................................................. 5

   D.    Parties' Briefing on Defendants' Motion for Summary Judgment ........................ 20

   E.    Parties' Briefing on Plaintiff's Motion to Amend ................................................ 23

II.    RELEVANT LEGAL STANDARDS ........................................................................ 24

   A.    Standard Governing a Motion for Summary Judgment ....................................... 24

   B.    Standard Governing Exhaustion of Administrative Remedies ............................ 26

   C.    Standard Governing a Motion to Amend ............................................................. 30

III.    ANALYSIS ................................................................................................................ 30

   A.    Defendants' Motion for Summary Judgment ...................................................... 30

   B.    Plaintiff's Motion to Amend ................................................................................ 36

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Complaint asserts the following two claims: (1) a claim of excessive force against Defendants, in violation of the Eighth Amendment and 42 U.S.C. § 1983; and (2) a claim of failure to intervene against Defendant Murphy, in violation of the Eighth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1; Dkt. No. 4.) As relief, Plaintiff seeks declaratory judgment, an "injunction compelling [D]efendants to be ordered never to do this again," and $250,000.00 in compensatory damages. (Dkt. No. 1.) The Court's Decision and Order dated April 5, 2017, thoroughly outlines Plaintiff's allegations and claims. (Dkt. No. 4.) Familiarity with the Complaint is assumed in this Order and Report-Recommendation.

B.      **Procedural History**

On March 20, 2017, Plaintiff commenced this action by the filing of a verified Complaint against Sergeant John Murphy, Correction Officer John Sharrow, and Correction Officer John Doe in their individual and official capacities (Dkt. No. 1) together with a motion to proceed *in forma pauperis* (Dkt. No. 2). On April 5, 2017, the Court granted Plaintiff's motion to proceed *in forma pauperis*, dismissed all claims against the named Defendants in their official capacities, dismissed all request for declaratory and injunctive relief, and ordered that a response was required to Plaintiff's claims of (1) excessive force against the named Defendants, and (2) failure to intervene against Defendants Murphy and Sharrow. (Dkt. No. 4.) Further, in its order dated April 5, 2017, the Court warned that if Plaintiff failed to "ascertain the identity of the Doe defendant so as to permit the timely service of process, this action will be dismissed as against that individual." (*Id*. at 8.)

By letter dated July 10, 2017, Plaintiff advised the Court that Defendants referred to in the Complaint as "John Murphy, Sergeant" and "John Sharrow" are actually "George Murphy, Lieutenant" and "Charles Sharrow," respectively.  (Dkt. No. 17.)  On July 20, 2017, Defendants Murphy and Sharrow filed an answer to the Complaint.  (Dkt. No. 18.)  Based on Plaintiff's letter dated July 10, 2017, and the answer filed on July 20, 2017, the Court ordered the Clerk of the Court to amend the docket sheet accordingly.  (Dkt. No. 20.)

On August 16, 2018, United States Magistrate Judge David E. Peebles issued a text order noting that the discovery deadline had expired and requiring Plaintiff to file an affidavit with the Court on or before September 7, 2018, showing cause why his action should not be dismissed as to defendant John Doe, Correction Officer, Great Meadow Correctional Facility, for failure to prosecute based on Plaintiff's inaction.  (Dkt. No. 39.)  By affidavit dated September 4, 2018, Plaintiff identified John Doe as C.O. B. Cosey.  (Dkt. No. 40.)  The Court construed Plaintiff's affidavit as an application to amend the Complaint, identify the John Doe defendant as C.O. B. Cosey, and to join C.O. B. Cosey in the action.  (Dkt. No. 41.)  Defendants Murphy and Sharrow did not object to the Court granting Plaintiff permission to amend his Complaint "solely for the purpose of simply substituting 'C.O. B. Cosey's' name in the place of 'Correctional Officer John Doe' (without any additional changes)."  (Dkt. No. 42.)  On September 12, 2018, the Court granted Plaintiff's letter request to amend the Complaint to "substitute C.O. B. Cosey, Great Meadow Correctional Facility, in place of defendant John Doe, Correctional Officer, Great Meadow Correctional Facility."  (Dkt. No. 43.)

On November 16, 2018, Defendant C.O. B. Cosey answered the Complaint.  (Dkt. No. 51.)

On April 30, 2019, Defendants moved for summary judgment, which included a notice of the consequences of failing to respond. (Dkt. No. 66.) On May 1, 2019, the Court sent a notice to Plaintiff indicating that a response to Defendants' motion for summary judgment was due on May 21, 2019, and including a notification of the consequences of failing to respond to a motion for summary judgment. (Dkt. No. 67.)

On July 10, 2019, Plaintiff sent a letter inquiring as to the status of Defendants' motion for summary judgment. (Dkt. No. 70.) The Court *sua sponte* granted an extension of time to respond to the pending motion until August 30, 2019. (Dkt. No. 71.)

On August 2, 2019, Plaintiff filed a letter requesting permission to amend the Complaint if the case did not settle. (Dkt. No. 73.) Plaintiff's letter request was denied as improper. (Dkt. No. 74.) In addition, the Court noted that pursuant to the Mandatory Pretrial Discovery and Scheduling Order, the deadline to amend pleadings was November 20, 2017. (*Id*.) As a result, the Court noted that "[i]f plaintiff wishes to amend his complaint, he must seek leave by filing a proper motion to amend his complaint." (*Id*.)

On August 7, 2019, Plaintiff filed a letter motion requesting a copy of the dispositive motion and an extension of time to respond. (Dkt. No. 75.) The Court directed the Clerk to provide Plaintiff with copies of the Notice of Motion, Declarations submitted in support of the motion, the Statement of Material Facts, and the Memorandum of Law. (Dkt. No. 76.) However, the Court noted that if Plaintiff desired copies of the exhibits, he would be required to pay the copying cost of $0.50 per page. (*Id.*)

On August 21, 2019, Plaintiff filed a letter motion stating that he would like "to obtain all Defendants['] [e]xhibits in this matter." (Dkt. No. 77.) On August 26, 2019, Plaintiff filed a letter motion seeking a "continuance under Rule 56(f) . . . to obtain information to submit a

proper opposition." (Dkt. No. 78.) On August 28, 2019, the Court directed Plaintiff to, within

ten days, submit payment in the amount of $324.50 for the exhibits submitted in support of

Defendants' motion for summary judgment. (Dkt. No. 79.) In addition, the Court granted in part

Plaintiff's request for a "continuance" and extended the deadline to respond to Defendants'

motion to October 14, 2019. (*Id.*) However, the Court denied Plaintiff's request to the extent

that Plaintiff sought additional discovery to respond to the motion. (*Id.*)

On September 9, 2019, Plaintiff filed a letter motion setting forth specific pages of

exhibits and declarations that he was requesting. (Dkt. No. 80.) On September 11, 2019, the

Court noted that Plaintiff failed to timely submit payment in accordance with the order dated

August 28, 2019, but that Plaintiff submitted a letter motion requesting specific exhibits and a

copy of his amended complaint. (Dkt. No. 81.) Based on Plaintiff's revised request, the Court

directed Plaintiff to, within ten days, submit payment in the amount of $32.00. (*Id.*) However,

the Court indicated that the deadline to respond to Defendants' motion for summary judgment

remained October 14, 2019. (*Id.*) On September 17, 2019, the Clerk of the Court received from

Plaintiff payment in the amount of $32.00 and sent Plaintiff copies of the requested exhibits.

(Dkt. No. 82.)

On October 4, 2019, Plaintiff filed an opposition to Defendants' motion for summary

judgment. (Dkt. No. 83.)

On October 15, 2019, Plaintiff filed a letter request seeking to supplement his response to

Defendants' Statement of Material Facts and an extension of time to further oppose Defendants'

motion. (Dkt. No. 84.) On October 16, 2019, the Court granted Plaintiff's request to the extent

that it sought to supplement his response to Defendants' Statement of Material Facts with the

document attached to his request. (Dkt. No. 85.) However, the Court denied (a) Plaintiff's

request to file an additional memorandum of law, and (b) to the extent it sought to amend his Complaint because the request was improper. (*Id.*) In addition, the Court again noted that to the extent Plaintiff "wishes to amend his complaint, he must file a proper motion to amend his complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure, and Northern District of New York Local Rule 7.1." (*Id.*)

On October 28, 2019, Defendants filed a reply in further support of their motion for summary judgment. (Dkt. No. 87.)

On November 1, 2019, Plaintiff filed a motion to amend the Complaint. (Dkt. No. 88.) On November 22, 2019, Defendants filed an opposition to Plaintiff's motion to amend. (Dkt. No. 89.)

**C.    Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response. (*Compare* Dkt. No. 66, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 86 [Pl.'s Supplemental Response to Defs.' Rule 7.1 Statement].)

1.    Plaintiff initiated this action by the filing of a Complaint on March 20, 2017, which named as defendants George Murphy (sued incorrectly as "John Murphy"), Charles Sharrow (sued incorrectly as "John Sharrow"), and an unidentified "Correctional Officer John Doe."

2.    Defendants Murphy and Sharrow filed an Answer to the Complaint on July 20, 2017.

3.      On September 12, 2018, the Court granted Plaintiff's letter request to amend the Complaint "to substitute C.O. B. Cosey, Great Meadow Correctional Facility in place of defendant John Doe, Correctional Officer."

4.      Defendant Benjamin Cosey filed an Answer to the Complaint on November 16, 2018.

5.      Plaintiff asserts a claim of excessive force pursuant to the Eighth Amendment against Defendants and a claim of failure to intervene pursuant to the Eighth Amendment against Defendant Murphy.

6.      Plaintiff alleged that he was assaulted by Defendants on November 2, 2016, while he was an inmate housed at Great Meadow Correctional Facility ("Great Meadow").

7.      Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and from October 20, 2016, until December 5, 2016, he was housed at Great Meadow.  From December 6, 2016, until June 6, 2017, Plaintiff was housed at Five Points Correctional Facility ("Five Points").

8.      On November 2, 2016, at approximately 12:20 P.M., Defendant Sharrow conducted a properly authorized random search of Plaintiff's cell at Great Meadow in the D-7 housing unit.[2]

---

[2]      Plaintiff denies this asserted fact and improperly cites generally to "Exhibit 4."  (Dkt. No. 86, at ¶ 8.)  Plaintiff's citation fails to comply with Local Rule 7.1(a)(3), which provides that "[e]ach fact listed shall set forth a specific citation to the record where the fact is established." *See also Robert H. Law, Inc. v. Woodbine Bus. Park, Inc.*, 13-CV-1393, 2018 WL 851382, at *5 (N.D.N.Y. Feb. 12, 2018) (Suddaby, C.J.) ("[T]he Court does not accept this as an undisputed fact . . . [because] [d]efendant cited generally to the entire affidavit of Derek Tarolli rather than to a specific portion of that affidavit where its assertion is supported"); *Rizzo v. Health Research, Inc.*, 12-CV-1397, 2016 WL 632546, at *2 (N.D.N.Y. Feb. 16, 2016) (Suddaby, C.J.) ("Of these 136 denials, 117 denials do not contain a specific citation to the record. Therefore, the facts 'denied' by these paragraphs will be deemed admitted."); *Benson v. Otis Elevator Co.*, 10-CV-3246, 2012 WL 4044619, at *1, n.1 (S.D.N.Y. Sept. 13, 2012) (deeming fact asserted by movant

9.      During the November 2, 2016 search of Plaintiff's cell, Defendant Sharrow found a weapon underneath Plaintiff's cell bed, in the form of a piece of wood, sharpened on three sides to a point.[3]

10.     On November 2, 2016, after finding the weapon concealed in Plaintiff's cell, Defendant Sharrow secured the weapon, removed it from Plaintiff's cell, had digital photographs taken of the weapon in his presence by another correction officer in the Great Meadow

---

to be admitted by non-movant where non-movant supported denial "only with non-specific citations to the entire testimony of several witnesses"); *Janneh v. Regal Entm't*, 07-CV-0079, 2009 WL 2922830, at *1, n.3 (N.D.N.Y. Sept. 8, 2009) (McAvoy, J.) ("In response . . . Janneh filed a 'Statement of Material Facts Not in Dispute.' . . . The document consists of . . . a phrase at the end of the document stating simply: 'See Attached Exhibits.' Janneh's statement fails to comply with the Local Rules which Janneh has repeatedly been advised about . . . ."); *Univ. Calvary Church v. City of New York*, 96-CV-4606, 2000 WL 1538019, at *2, n.6 (S.D.N.Y. Oct. 17, 2000) ("Despite the clear language of Rule 56 requiring specificity, Plaintiffs rarely offers an exact cite in support of their version of the facts. . . . [A] vague cite to all of the exhibits is simply unacceptable.")

After a careful review of the record, Plaintiff's citation to "Exhibit 4" appears to be Dkt. No. 83, Attach. 1 at 1-2, which is an alleged grievance dated November 9, 2016. (Dkt. No. 83 at 25.) Plaintiff's grievance is not sworn to under penalty of perjury and thus, fail to raise a genuine issue of material fact for trial.

Moreover, Plaintiff asserts that he was "in his program during the search conducted by defendant C.O. Sharrow at approximately 12:20 P.M." (Dkt. No. 83 at 25.) Even taking as true Plaintiff's assertions, they do not contradict the fact as asserted by Defendants. Instead, Plaintiff attempts to controvert an implication of the fact asserted, which is improper in a Rule 7.1 Response. *See Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"); *Yetman v. Capital Dist. Transp. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that summary judgment procedure involves the disputation of asserted facts not implied facts). To the extent that a non-movant desires to set forth any additional material facts that he contends are in dispute, he is required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs. As a result, I deemed this fact admitted.

[3]      *See, supra* note 2. Further, the allegations contained in Plaintiff's grievance do not controvert the fact as asserted by Defendants. (*Compare* Dkt. No. 66, Attach. 1 at ¶ 9, *with* Dkt. No. 83, Attach. 1 at 1-2.)

Sergeant's Interview Room at approximately 12:40 P.M., and the weapon was then placed in an evidence bag and secured.

11.      Defendant Sharrow then wrote an inmate Misbehavior Report charging Plaintiff with violating DOCCS inmate rules 113.10 (barring inmates from possessing a weapon), 113.11 (barring inmates from possessing an authorized item that has been altered in any manner so as to change its original intent and/or purpose), and 113.23 (barring an inmate from possessing contraband/items that have not been authorized).

12.      After the weapon was found in Plaintiff's cell on November 2, 2016, and Defendant Murphy was notified of that incident, Plaintiff was taken out of the program he was participating in and brought to the Great Meadow Sergeant's Interview Room on that same date.

13.      In the Sergeant's Interview Room, Plaintiff was interviewed by Defendant Murphy about the weapon found in his cell that day.[4]

14.      While being interviewed by Defendant Murphy on November 2, 2016, Plaintiff admitted that the weapon found in his cell belonged to him and that he had made it from a wooden Scrabble game tile holder that he had taken it out of the Great Meadow school area.[5]

15.      Plaintiff would not say why he had that weapon. When asked if he was being threatened by anyone and whether he needed protective custody, Plaintiff declined protective

---

[4]      *See, supra,* note 2. Although Plaintiff asserts that there was also a physical altercation in the Sergeant's Interview Room, there is no issue of fact that while in the Sergeant's Interview Room, Plaintiff was questioned about the contents of his cell. (Dkt. No. 83, Attach. 1 at 1-2.)

[5]      Plaintiff denies this fact as asserted by Defendants. (Dkt. No. 86 at ¶ 14.) However, Plaintiff admits the fact as set forth in Defendants' Statement of Material Facts paragraph number 15, which reiterates Plaintiff's admission that the weapon belonged to him. (*Compare* Dkt. No. 66, Attach. 1 at ¶ 15, *with* Dkt. No. 86 at ¶ 15.) Based on Plaintiff's response that he "agrees" with paragraph number 15, Plaintiff's improper citation to "Exhibit 4" here, and Defendants' proper citation to the record that supports this fact, I deem this fact admitted.

custody and signed a Memorandum dated November 2, 2016, stating that he did not need and was not requesting protective custody.

16.    After being interviewed by Defendant Murphy on November 2, 2016, Plaintiff was then escorted from the Sergeant's Interview Room directly back to his cell in the D-7 housing unit at Great Meadow, by Defendant Cosey and non-party Corrections Officer Pereira. Plaintiff arrived at his cell at approximately 1:12 P.M., at which time he was placed on keep-lock status (i.e. he was confined to his cell) pending transfer to the Special Housing Unit ("SHU").

17.    On November 2, 2016, at approximately 2:10 P.M., Defendants Murphy and Cosey went to the Great Meadow D-7 housing unit, retrieved Plaintiff from his cell, and brought him to the Great Meadow SHU.

18.    Plaintiff arrived at the Great Meadow SHU at approximately 2:15 P.M.

19.    Non-party Sergeant Byers processed Plaintiff for admission to the SHU, noted that Plaintiff's mental health status might preclude him from admission to the SHU, and contacted non-party Office of Mental Health clinician Ives who approved Plaintiff for admission to the SHU.

20.    Defendants did not have any knowledge that Plaintiff filed any grievance against them or any grievance related to the events involved in this lawsuit.[6]

21.    Defendants have not ever interfered with Plaintiff filing any grievance, or any appeal of any grievance; nor did they ever attempt to get anyone else to do so; nor do they have any knowledge of anyone else having done so.[7]

---

[6]    *See, supra*, note 2.  The document that the Court surmised was Plaintiff's "Exhibit 4" from the record, does not controvert this fact as alleged.  (Dkt. No. 83, Attach. 1.)

[7]    *See, supra*, note 6.

22.     DOCCS has established an Inmate Grievance Program in accordance with Correction Law § 139.  DOCCS's policies and procedures regarding the Inmate Grievance Program are set forth in Part 701 of Title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").

23.     These regulations, set forth NYCRR Title 7, are mirrored with minor refinements in DOCCS's Policy and Procedure Manual, Departmental Directive Number 4040.

24.     NYCRR Title 7 is available in the law library at every DOCCS correctional facility.

25.     Directive Number 4040 is distributed to every DOCCS correctional facility and is available in every facility law library and general library.

26.     Inmates housed in the SHU, keep-locked (confined to their cell), or otherwise unable to leave their cell at DOCCS correctional facilities (including Great Meadow and Five Points), can obtain a copy of NYCRR Title 7, Directive 4040, and other materials from the facility law library and general library upon request for in-cell use.

27.     The written policies and procedures concerning the DOCCS Inmate Grievance Program are widely distributed and readily accessible to inmates in DOCCS custody.

28.     When inmates transfer to DOCCS correctional facilities (including Great Meadow and Five Points), they receive an orientation handbook which includes information about how they can file and appeal a grievance.

29.     Each DOCCS correctional facility conducts an orientation, which provides an overview to the inmates of the grievance program, including, but not limited to (a) how to both file and appeal grievances, (b) where the grievance office is located, (c) how inmates can get grievance forms, (d) what information the inmates should provide when seeking to file a

10

grievance or an appeal of a grievance decision, (e) where the inmates can review Directive 4040 Inmate Grievance Program, and (f) how inmates can schedule an appointment to meet with grievance staff.

30.    The DOCCS grievance process allows any inmate who is personally affected by an issue to address a complaint to the Inmate Grievance Resolution Committee ("IGRC").  The IGRC is a facility committee of elected inmate representatives and appointed staff members.

31.    To start the grievance process, the inmate sends a written complaint to the grievance office at the relevant facility.

32.    An inmate submits a grievance by placing it in one of multiple lockboxes in the facility or the inmate can send it to the grievance office via facility mail.

33.    Inmates in the SHU, keep-locked (confined to their cell), or otherwise unable to leave their cell at DOCCS correctional facilities (including Great Meadow and Five Points) can submit grievances to the Inmate Grievance Office through facility mail.  These inmates hand their mail for the grievance office to the officers in their housing unit, who then put the mail in a secured lockbox, which is transported to the mailroom, where it is sorted and put in the Inmate Grievance Office mailbox.

34.    Pursuant to Directive 4040 § 701.5 (a)(1)—as mirrored in 7 NYCRR § 701.5 (a)(1)—an inmate must submit a grievance complaint to the grievance office within twenty-one days of the alleged incident about which they are complaining.

35.    However, pursuant to Directive 4040 § 701.6 (g)(1)(i), an inmate may request an extension of time to file a grievance or an appeal of a grievance decision.  Any such request must be in writing and must be submitted to the grievance clerk with the grievance or appeal the inmate wants to file.

36.     Pursuant to Directive 4040 § 701.6 (g)(1)(i)(a), the Inmate Grievance Program Supervisor ("IGPS") "may" grant an exception to the time limit for filing a grievance based on mitigating circumstances, though an exception to the time limit may not be granted more than forty-five days after an alleged occurrence.

37.     An extension to the twenty-one day limit to file a grievance is only granted if there are sufficient mitigating circumstances.

38.     If the inmate is not satisfied with the decision of the IGRC, the inmate can appeal to the facility Superintendent.  If the inmate is not satisfied with the decision of the facility Superintendent, he can appeal to the Central Office Review Committee ("CORC"), the body which renders final administrative decisions under DOCCS's Inmate Grievance Program.

39.     There is also an expedited review process for grievances concerning complaints of misconduct by Correction Officers or other prison employees.

40.     If an inmate seeks expedited review of a grievance concerning complaints of misconduct by DOCCS staff, it is immediately sent to the facility Superintendent for review and decision, and if and inmate is unsatisfied with the Superintendent's decision, he may appeal the Superintendent's decision to CORC as in the ordinary grievance procedure.

41.     CORC is the final appellate level of the Inmate Grievance Program.

42.     An inmate appealing the Superintendent's decision to CORC must submit the appeal to the facility IGRC office for forwarding to CORC, and not to CORC directly.

43.     If an inmate seeks to appeal a grievance to CORC but has not yet received timely responses to a properly filed grievance at the facility level, he may only do so by submitting such

request, in writing, to the IGP Supervisor at the facility where he initially submitted the grievance to the IGRC for filing.[8]

44.    If an inmate claims that he tried to file a grievance, but that it was never filed at the facility level, he may submit it for filing again, or, if it is already more than twenty-one days after the alleged incident, he may request an extension of time at the facility level to again try to file the grievance.[9]

45.    Any request for an extension of time to file a grievance or grievance appeal must be made by the inmate to the IGPS at the facility level, and not to CORC.

46.    If permission to file a late grievance is denied, then, pursuant to Directive 4040 § 701.6 (g)(1)(ii), an inmate may file a separate grievance that an exception to the twenty-one day time limit was denied.

47.    If an inmate alleges that he tried to file a grievance within the twenty-one day limit but that the grievance was not filed, the inmate asks for an extension to file the grievance past the 21 day limit, and the extension request is denied, then the inmate is permitted to file a

---

[8]    Plaintiff denies this fact and cites to *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016).  In *Williams*, the Second Circuit considered whether administrative remedies had been "actually available" to an inmate plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust.  *Id.* at 123-27.  There, the plaintiff alleged that, while housed in the SHU, he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf.  *Id.* at 120-121.  Approximately two weeks later, the plaintiff was transferred to a different facility.  *Id.* at 121.  He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it.  *Id.*  It was undisputed that plaintiff never appealed the grievance.  *Id.*

Here, the statement of fact relates to "a properly filed grievance" and thus is not within the unique circumstances presented in *Williams*.  As a result, I deem this fact admitted.

[9]    Plaintiff denies this fact and cites to *Williams*.  *See, supra*, note 8.  The Court is mindful of the holding in *Williams*, which considered the procedure for appealing a grievance was never filed.  However, the fact as asserted is accurate because these options are available, should an inmate wish to pursue them.

grievance about that extension request denial at the facility level.  The inmate may present, with his extension denial grievance, what proof he has to support his claim that he should have been granted permission to again try to file his grievance past the twenty-one day limit.

48.    DOCCS Directive No. 4040 requires that grievance files and logs be maintained for at least the current year plus the previous four calendar years and CORC maintains files of grievance appeals to CORC in accordance with the Directive.

49.    The CORC computer database contains records of all appeals received from the facility Inmate Grievance Program Offices, which were heard and decided by CORC since 1990.

50.    All documents related to a particular grievance, such as receipt of grievances, grievance investigations, time limit exemption requests, correspondence related to a grievance, and grievance appeals (both to the Superintendent and to CORC), are kept and stored in the grievance office of the DOCCS facility at issue.  These documents are kept in the regular course of that office's activities as they are created and received.

51.    DOCCS facility grievance offices keep all documents for grievances filed in the current year and in the previous four calendar years.

52.    During all times relevant to this lawsuit, Plaintiff was aware of the grievance process, had access to Directive 4040, and had previously pursued grievances through each stage of the Inmate Grievance Program.

53.    Plaintiff was housed in the Great Meadow SHU from November 2, 2016, until he was transferred out of Great Meadow on December 5, 2016.

54.    While housed in the Great Meadow SHU from November 2, 2016 through December 5, 2016, Plaintiff submitted a grievance designated as Grievance GM-61530-16 ("Cold Meals Grievance").

55.     Plaintiff was in the Great Meadow SHU at the time he wrote and submitted the Cold Meals Grievance.  Plaintiff handed the grievance to an officer on the SHU unit for forwarding to the Great Meadow grievance office by way of facility mail.

56.     The Cold Meals Grievance was dated November 22, 2016, it was received in the Great Meadow grievance office by way of facility mail on December 1, 2016, and filed the same day.

57.     The Cold Meals Grievance was properly and normally processed and investigated by the Great Meadow grievance office.

58.     The Great Meadow IGRC issued a decision regarding the Cold Meals Grievance on December 8, 2016, which was provided to Plaintiff.

59.     Plaintiff did not appeal the IGRC's decision on the Cold Meals Grievance to the Great Meadow Superintendent or to CORC.

60.     The Cold Meals Grievance alleged that Plaintiff's meals were cold when he received them in the SHU.  This grievance made no allegations about excessive force being used against him nor did it mention Defendants.

61.     Plaintiff asserts that he sent a letter dated November 22, 2016, to the Great Meadow grievance office.

62.     The Great Meadow grievance office does not have any record of receiving a letter from Plaintiff dated November 22, 2016.

63.     Plaintiff asserts that he sent a letter dated November 29, 2016, to the Great Meadow grievance office.

64.     The Great Meadow grievance office does not have any record of receiving a letter from Plaintiff dated November 29, 2016.

15

65.    Plaintiff asserts that he sent a letter dated November 23, 2016, to the Great Meadow Superintendent.

66.    The Great Meadow Superintendent's office does not have any record of receiving a letter from Plaintiff dated November 23, 2016.

67.    Plaintiff asserts that he sent a letter dated December 2, 2016, to the Great Meadow Superintendent.

68.    The Great Meadow Superintendent's office does not have any record of receiving a letter from Plaintiff dated December 2, 2016.

69.    The Great Meadow Superintendent's office does not have any record of receiving any correspondence from Plaintiff.

70.    Plaintiff asserts that he wrote sick call slips dated November 3, 2016, November 7, 2016, and November 13, 2016, while housed at Great Meadow.

71.    Plaintiff produced these sick call slips at his deposition on May 17, 2018.

72.    Plaintiff asserts that he submitted the original versions of the sick call slips to the Great Meadow medical department.

73.    The Great Meadow medical department does not have a record of receiving Plaintiff's sick call slips.

74.    On December 6, 2016, Plaintiff was transferred to Five Points and remained housed there until June 6, 2017.  While housed at Five Points, Plaintiff submitted one grievance designated as Grievance FPT-32776-17 ("Different Shoes Grievance").

75.    The Different Shoes Grievance, was dated January 16, 2017, received in the Five Points grievance office by way of facility mail on January 19, 2017, and was formally filed on January 20, 2017.

76.     After the Five Points grievance office received the Different Shoes Grievance, it was properly and normally processed and investigated.

77.     The Five Points IGRC issued a decision regarding the Different Shoes Grievance on February 23, 2017, which was provided to Plaintiff.

78.     Plaintiff did not appeal the IGRC's decision on the Different Shoes Grievance to the Five Points Superintendent or to CORC.

79.     In the Different Shoes Grievance, Plaintiff alleged that he had flat feet and needed special shoes.  This grievance made no allegation that Defendants used any force.

80.     Other than the Different Shoes Grievance, Plaintiff did not submit any other grievance to the Five Points grievance office at any time relevant to this action.

81.     Plaintiff did not submit any grievance appeal, request for an extension of time to file a grievance, correspondence, or other document (other than the Different Shoes Grievance) to the Five Points grievance office at any time relevant to this claim.

82.     While housed at Five Points, Plaintiff did not submit any grievance regarding Defendants or alleging that, while he was housed at Great Meadow, Defendants used excessive force against him or had failed to intervene when others were using excessive force against him.

83.     To Defendants' knowledge, Plaintiff has never filed any grievance against any of Defendants or any grievance related to the events involved in this lawsuit.

84.     Defendants did not interfere with Plaintiff filing any grievance or any appeal of any grievance, nor did they ever attempt to get anyone else to do so, nor do they have any knowledge of anyone else having done so.

85.     The only letter sent by Plaintiff that CORC has a record of receiving, was dated December 17, 2016, and was received by CORC on January 13, 2017.

86.    On January 13, 2017, CORC responded, in writing, to the letter dated December 17, 2016.

87.    As of December 6, 2016, Plaintiff was housed at Five Points.

88.    In the letter dated December 17, 2016, Plaintiff alleged that he had been assaulted by staff at "Comstock Corr/Fac," he "placed a grievient [sic] regarding this assault and the facility I.R.G.C. never filed this docment [sic][,]" and he tried to exhaust his "institution ramedies [sic] and they have been sabateged [sic]."

89.    In the letter dated December 17, 2016, Plaintiff also claimed that he "wrote to the Superintendent regarding his subordinates['] attack and assault and he never responded to [his] complaints."

90.    The letter dated December 17, 2016, did not specify when Plaintiff allegedly tried to file any grievance, what facility he attempted to file any such grievance with, or whether he tried to obtain an extension of time to re-file the grievance if it had not been filed when he initially tried to do so.[10]

91.    Further, the letter dated December 17, 2016, while indicating that Plaintiff had written a Superintendent (at an unspecified facility) regarding an alleged assault, did not specify (a) when he had allegedly done so, (b) whether he had appealed or pursued any alleged grievance to the Superintendent before writing to CORC, or (c) whether he had tried to submit any appeal of any alleged grievance to CORC through the IGRC office at the relevant facility.[11]

---

[10]    Plaintiff denies this fact and cites to a letter dated January 3, 2017.  (Dkt. No. 86 at ¶ 103 [citing Dkt. No. 83, Attach. 1 at 13].)  The fact as asserted relates solely to the contents of the letter dated December 17, 2016.  Plaintiff's attempt to controvert an implication of the fact as set forth by Defendants is improper.  *See, supra*, note 2.

[11]    *See, supra*, note 10.

92.    The letter dated December 17, 2016, did not state that Plaintiff attempted to contact the IGPS at the facility where he allegedly tried to file any grievance to verify its status, request an exception to the time limit for filing a grievance, or request that it be appealed to the next level of review as a result of any allegedly untimely facility responses.[12]

93.    The letter dated December 17, 2016, did not suggest that Plaintiff had been denied permission to file a late grievance at the facility level.

94.    The letter dated December 17, 2016, did not suggest that Plaintiff filed grievance challenging the denial of a requested extension to file past the twenty-one day limit, pursuant DOCCS Directive 4040, § 701.6 (g)(1)(ii).

95.    CORC's response letter, dated January 13, 2017, specifically referred Plaintiff to DOCCS Directive 4040 and the procedures outlined therein for filing and pursuing grievances. In addition, CORC's response advised Plaintiff that grievances could not be filed directly to CORC, but must be submitted to the IGRC at the facility.

96.    Since CORC does not keep the original letters sent to it by inmates, the original version of Plaintiff's letter dated December 17, 2016, was returned to him (with a "Received Inmate Grievance" date stamp on it showing that it had been received on "JAN 13 2017") along with CORC's letter dated January 13, 2017.[13]

97.    CORC sent its response letter dated January 13, 2017, to Plaintiff at Five Points since that is where he was housed at the time.

---

[12]    *See, supra*, note 10.

[13]    The Court notes that the date stamp on this document is illegible. (Dkt. No. 66, Attach. 13 at 3.) However, Plaintiff "agree[s]" with the fact as asserted, so the Court will deem it admitted. (Dkt. No. 86 at ¶ 109.)

98.     A diligent search of CORC records and logs reveals that CORC received and responded to only one letter from Plaintiff between October 20, 2016 and June 6, 2017 (the letter dated December 17, 2016).

99.     Plaintiff alleges that he sent CORC a letter dated January 3, 2017.

100.     CORC does not have a record of receiving any letter from Plaintiff dated January 3, 2017.

### D.     Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.     Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert that Plaintiff's causes of action must be dismissed because he did not fulfill the Prison Litigation Reform Act ("PLRA") exhaustion requirements.  (*See generally* Dkt. No. 66, Attach. 38 [Defs.' Mem. of Law].)  More specifically, Defendants argue that Plaintiff did not submit any grievance alleging that, while he was housed at Great Meadow, Defendants used excessive force against him.  (*Id*. at 11.)  Further, Defendants argue that Plaintiff did not submit any grievance appeal to the Great Meadow IGRC after failing to receive a response from the IGRC or the facility Superintendent.  (*Id*. at 15.)  Defendants assert that, because Plaintiff filed the Cold Meals Grievance while at Great Meadow and the Different Shoes Grievance while at Five Points (both of which were received by their respective IGRCs), he must not have filed any grievance with respect to the alleged incident of November 2, 2016, since the Great Meadow IGRC never received one.  (*See generally id.*)

20

## 2.    Plaintiff's Memorandum of Law in Support of His Motion to "Dismiss Defendants['] Pending Motion"[14]

Generally, in his "motion to dismiss" Defendants' motion, Plaintiff asserts the following two arguments: (1) he properly exhausted his administrative remedies, and (2), in any event, the administrative remedies were not available to him because he was dissuaded from exhausting his administrative remedies.  (Dkt. No. 83.)

First, Plaintiff argues he, like the plaintiff in *Williams v. Corr. Officer Priatno*, filed a grievance on November 9, 2016, but the grievance was never received by IGRC, and he was transferred to another facility without ever receiving a response.  (*Id.* [citing *Williams v. Corr. Officer Priatno*, 829 F.3d 118 (2d Cir. 2016)].)  Plaintiff argues that, as the Second Circuit in *Williams* ruled, "the regulations plainly do not describe a mechanism for appealing a grievance that was never filed."  (*Id.* at 10.)  As a result, Plaintiff argues that he complied with the exhaustion requirements to his fullest extent possible.  (*Id.* at 10-21.)

---

[14]    "The denial of an opponent's motion is not an appropriate request for relief in a motion under Fed. R. Civ. P. 7(b) because such a denial may be obtained through merely successfully resisting the opponent's motion."  *Doe by and Through Doe v. Brittonkill Cent. Sch. Dist. Bd. of Educ.*, 18-CV-0142, 2018 WL 6622191, at 4 n.5 (N.D.N.Y. Dec. 18, 2018) (Suddaby, C.J.) (citing *C.H.R.I.S.T., Inc. v. Meyers*, 00-CV-50402, 2002 WL 257814, at *1 (N.D. Ill. Feb. 20, 2002) ("[A] separate motion to deny an opposing party's motion for summary judgment is obviously unnecessary."); *Kan.-Neb. Natural Gas Co. v. City of St. Edward, Neb.*, 135 F. Supp. 629, 633 (D. Neb. 1955) ("A motion to deny an antecedent motion already set for hearing accomplishes nothing that could not be done by a simple appearance in resistance to the earlier motion."); *Fox v. Am. Airlines, Inc.*, 00-CV-0368, 2001 WL 1597851, at *1 (N.D. Tex. Dec. 12, 2001) ("[A] separate motion to deny summary judgment is unnecessary, and accordingly Plaintiff's Motion to Deny [Defendant's Motion for] Summary Judgment is denied as moot."); *Jones v. Milwaukee Cnty.*, 74-C-0374, 1979 WL 2035, at *5 (E.D. Wis. May 1, 1979) ("To oppose a motion, it is only necessary to file a brief or affidavits in opposition. A motion to deny the motion opposed is unnecessary. The defendants' motion is superfluous and will therefore be dismissed.")).  As a result, I liberally construe Plaintiff's motion to dismiss Defendants' motion, as an opposition to Defendants' motion for summary judgment.

Second, in the alternative, Plaintiff argues that he was dissuaded from pursuing his administrative remedies after being physically assaulted by officers on November 2, 2016. (*See generally* Dkt. No. 83.) As a result, Plaintiff argues that the administrative remedy process was not available to him for fear of physical retaliation. (*Id.*)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants assert that (1) this case is distinguishable from *Williams*, and (2) Plaintiff indisputably failed to exhaust his administrative remedies. (Dkt. No. 87 [Defs.' Reply Mem. of Law].)

First, Defendants argue that the *Williams* decision "dealt with a motion to dismiss for 'failure to state a claim[,]' where the defendants failed to carry their burden of establishing their 'failure to exhaust' affirmative defense and the plaintiff was transferred out of the incident facility so quickly after the incident in question that he did not have time to utilize any stage of the appeal procedure regarding the grievance he said he tried to file before being transferred to another facility." (*Id.* at 4.) In addition, Defendants argue that Plaintiff claims to have understood the grievance process "quite well," in contrast with the plaintiff in *Williams*, who "apparently did not even try to appeal his un-filed grievance to the next level out of confusion." (*Id.* at 8-9.) Further, Defendants argue that Plaintiff had until December 17, 2016, to request an extension of time to file or re-file a grievance regarding the alleged incident on November 2, 2016. (*Id.* at 9.) Defendants argue that after Plaintiff was transferred to Five Points on December 6, 2016, he was no longer housed in the SHU, which meant that he "personally s[aw] his mail being placed in a mail box"; but, Plaintiff did not seek an extension to file or re-file a grievance nor did he write to the Great Meadow grievance office or Superintendent to inquire about any grievance that he allegedly filed. (*Id.* at 9-10.) Defendants argue that the *Williams*

precedent is inapplicable to plaintiffs who are not confined to the SHU, and thus, Plaintiff's reliance on *Williams* is misplaced.  (*Id.*)

Second, Defendants argue that Plaintiff did not request an extension of time to properly re-file a grievance after he did not receive a response to his grievance dated November 9, 2016, or the multiple follow-up letters that he allegedly sent.  (*Id.* at 7.)  Moreover, Defendants argue that Plaintiff failed to file an appeal of his alleged grievance with the facility grievance office, as he was required to do pursuant to Directive 4040.  (*Id.*)  In addition, Defendants highlight that Plaintiff allegedly sent several letters with respect to his grievance, including a letter dated January 3, 2017, when he was already housed at Five Points, and which were not received by their intended recipients.  (*Id.* at 7-8.)  However, Defendants argue that an unrelated grievance that Plaintiff submitted while housed in the Great Meadow SHU and another unrelated grievance that Plaintiff submitted while housed at Five Points, were both received by the facilities' respective grievance offices.  (*Id.*)  Finally, Defendants argue that Plaintiff was aware that he could have sent a FOIL request for copies of his alleged grievance and follow-up letters to confirm receipt by the Great Meadow grievance office, but he did not.  (*Id.* at 10.)

### E.      Parties' Briefing on Plaintiff's Motion to Amend

After the parties completed briefing on Defendants' motion for summary judgment, Plaintiff filed a motion to amend his complaint pursuant to Fed. R. Civ. P. 15.  (Dkt. No. 88.) Plaintiff is seeking to (a) amend the caption, (b) slightly change the phrasing of factual details of the alleged incident on November 2, 2016, and (c) recover punitive damages in addition to the damages previously sought.  (Dkt. No. 88.)  However, Plaintiff's proposed amended complaint does not allege any changes to the causes of action that it asserts.  (*Id.*)

Generally, in opposition Defendants assert the following three arguments: (1) Plaintiff's motion is unduly late without explanation, especially in light of the fact that the deadlines to amend pleadings, complete discovery, and file dispositive motions have all expired, (2) Plaintiff fails to offer any rationale why his complaint should or needs to be amended, and (3) allowing amendment would unduly prejudice Defendants.  (Dkt. No. 89.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[15]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S.

---

[15]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[16]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[17]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[18]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

---

[16]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[17]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[18]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[19]–even when the non-movant was proceeding *pro se*.[20]

**B.    Standard Governing Exhaustion of Administrative Remedies[21]**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.").  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

---

[19]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[20]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[21]    This recitation tracks that of United States Magistrate Judge Thérèse Wiley Dancks in *Hamlett v. Stotler*, 17-CV-0939, 2019 WL 4306999, at *6-8 (N.D.N.Y. Aug. 15, 2019) (Dancks, M.J.), *adopted* 2019 WL 4305443 (Sharpe, J.).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly'" (quoting *Woodford*, 548 U.S. at 90)). In New York State prisons, DOCCS has a well-established three-step IGP. 7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* § 701.8; *see, e.g., Torres v. Carry*, 691 F. Supp. 2d 366 (S.D.N.Y. 2009) (Section 701.8 has been found applicable to claims of excessive force.). The superintendent is required to initiate an in-house investigation by higher-ranking supervisory personnel; request an investigation by the Inspector General's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. 7 N.Y.C.R.R. § 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment may not be withdrawn and must be addressed by the superintendent. *Id.* The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g). If the grievant wishes to appeal the superintendent's response to CORC, he must do so within seven calendar days of receipt of that response. *Id.* § 701.8(h).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotations marks and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at

29

216.  The plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*. *Id.*

### C.    Standard Governing a Motion to Amend

On a motion to amend a pleading, courts consider the following four factors: (1) whether there was undue delay in bringing the motion, (2) whether the motion is sought in bad faith, (3) whether the proposed amendment causes prejudice to the non-movant, and (4) whether the amendment could not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that permissible grounds upon which to base the denial of a motion for leave to file an amended complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

## III.    ANALYSIS

### A.    Defendants' Motion for Summary Judgment

Applying the legal standard set forth above, the issue of exhaustion involves a two-step analysis: (1) the Court must determine whether Plaintiff properly exhausted his administrative remedies by following the steps required by the administrative review process, (2) if Plaintiff did not exhaust his administrative remedies, the Court must then determine whether the administrative remedy was available to Plaintiff.  *Hamlett*, 2019 WL 4306999, at *8.  Both steps of the analysis are relevant here.

### 1.    Plaintiff's Failure to Exhaust

Plaintiff claims that on November 9, 2016, he submitted a written grievance related to the incident of November 2, 2016.  (Dkt. No. 1; Dkt. No. 83 at 12.)  Even taking as true Plaintiff's assertion that he filed a grievance, it is undisputed that he never appealed the non-response from

30

the IGRC or the superintendent.  (*See generally* Dkt. No. 83, Attach. 1.)  Even if Plaintiff's

letters to the superintendent and CORC were liberally construed as appeals, they were

improperly submitted directly to the superintendent and CORC, as opposed to through the

grievance office.  7 N.Y.C.R.R. § 701.5(c)(1); *Id.* § 701.5(d)(1).  Therefore, the Court finds that

Plaintiff failed to exhaust his administrative remedies under the DOCCS IGP prior to

commencing this lawsuit.

### 2.    Availability of Administrative Remedies

As explained above, the Court's finding that Plaintiff failed to exhaust his administrative

remedies does not end the exhaustion review.  The question of availability in this case is

governed by the Second Circuit's decision in *Williams*,[22] in which the court held that the opacity

of Section 701.8(g) rendered the DOCCS IGP procedure unavailable to the plaintiff-inmate, who

had failed to appeal an unfiled, unanswered grievance.  *Williams v. Corr. Officer Priatno*, 829

F.3d 118 (2d Cir. 2016).

As in *Williams*, Plaintiff claims that he drafted a grievance, which complained of an

assault by corrections officers, and gave it to a correction officer for delivery to the IGP office

because he was housed in the SHU.  (Dkt. No. 66, Attach. 18 at 175); *Williams*, 829 F.3d at 120-

21.  Plaintiff, like the plaintiff in *Williams*, was transferred to another facility before receiving

any response regarding the grievance he had given to a correction officer for filing.  *Id.*  In

addition, here, as in *Williams*, it is undisputed that Plaintiff never received a response to the

unfiled grievance and did not appeal to CORC pursuant to 7 N.Y.C.R.R. § 701.8(g).  *Id.* at 125.

---

[22]    "That *Williams* was decided on a motion to dismiss and not a summary judgment motion
does not change the analysis."  *Medina v. Napoli*, 725 F. App'x 51, 54 (2d Cir. 2018).

In *Williams*, the Second Circuit acknowledged that under 7 N.Y.C.R.R. § 701.8(g)—the

DOCCS regulation also relevant here—an inmate may appeal a grievance "to the next step" if he

does not receive a timely response from the superintendent.  *Williams*, 829 F.3d at 124.

However, the Court there concluded that:

> Even if Williams technically could have appealed his grievance, we
> conclude that the regulatory scheme providing for that appeal is "so
> opaque" and "so confusing that . . . no reasonable prisoner can use [it]."
> *Ross*, 136 S. Ct. at 1859 (quoting Tr. of Oral Arg. 23).  The regulations
> simply do not contemplate the situation in which Williams found himself,
> making it practically impossible for him to ascertain whether and how he
> could pursue his grievance.

*Id.*  Accepting Williams's allegation that the officer to whom he had given the grievance did not

file it, the Court found:

> Under that circumstance, the regulations do not adequately outline the
> process to appeal or otherwise exhaust administrative remedies.  On their
> face, the regulations only contemplate appeals of grievances that were
> actually filed.  For example, if the grievance had never been filed, the
> superintendent would never have received it and the timeline for her to
> provide a response within 25 days of "receipt of the grievance" would
> never have been triggered.  NYCRR tit. 7, § 701.8(f).  In turn, the textual
> provision allowing a grievant to appeal to the CORC would never have
> come into effect.  *See id.* § 701.8(g) ("If the superintendent fails to
> respond within the required 25 calendar day time limit the grievant may
> appeal his/her grievance to CORC.")  Accordingly, the regulations give no
> guidance whatsoever to an inmate whose grievance was never filed.

*Id.*

The Court noted in *Williams* that the obscurity of the regulation was compounded by the

transfer of Williams to another facility approximately two weeks after having given the

grievance to the correction officer.  *Id*. at 126.  Similarly here, Plaintiff was transferred to

another facility approximately twenty-six days after he allegedly gave the grievance to a

correction officer for filing.

In *Williams*, the defendants outlined three options "that would be presented to an inmate following his appeal of an unfiled grievance: (1) if it is still within 21 days of the incident, the inmate can re-file the complaint; (2) if it is beyond 21 days but within 45 days of the incident, the inmate can request an exception to the 21-day time limit if he can show mitigating circumstances; or (3) if it is more than 45 days since the incident, the inmate may file a separate complaint grieving the denial of an extension to the time limit." *Williams*, 829 F.3d at 125. Defendants here outline the same options and argue that because Plaintiff did not pursue these options, he failed to exhaust his administrative remedies.  In *Williams*, the Second Circuit rejected that argument and concluded that those options "do not involve appeals of grievances but provide instructions on the timelines that apply to the filing of new complaints."  *Id.*

Moreover, Plaintiff was not informed until sometime after February 22, 2017, that no grievance was on file, which was well beyond[23] the forty-five day outer most time limit for seeking an extension of time to re-file a grievance.  (Dkt. No. 66, Attach. 33 at ¶ 8.) 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a).  "There is nothing in the summary judgment record suggesting that had Plaintiff filed the grievance[] at Five Points after [February 22, 2017], [it] would not have been rejected as untimely under the regulations."  *Hamlett v. Stotler*, 17-CV-939, 2018 WL 2729263, at *8 (N.D.N.Y. Apr. 27, 2018) (Dancks, M.J.).

Defendants argue that *Williams* is inapplicable and cite to *Engles v. Dougherty*, 14-CV-1185, 2017 WL 6466309, at *5 n.5 (N.D.N.Y. Aug. 22, 2017).  Notably, *Engles* was decided before *Medina*, which held that the reasoning in *Williams* is also applicable in a motion for summary judgment.  *See, supra*, note 23.  Further, *Engles* is distinguishable because (a) the defendant in *Engles* was not transferred to another facility during the relevant time period, and

---

[23]     Forty-five days after the incident on November 2, 2016, was December 17, 2016.

(b) the plaintiff in *Engles* filed multiple grievances for discrete incidents and testified that he

filed a "separate grievance" for the subject incident but "was unclear about the details of such a

grievance." *Engles*, 2017 WL 6466309, at *4-5 & n.5. In contrast, here, (a) Plaintiff was

transferred to another facility approximately twenty-six days after he attempted to file a

grievance, and (b) Plaintiff presented a copy of the grievance that he allegedly attempted to file.

Even if Plaintiff's alleged grievance had been properly filed with the Great Meadow

grievance office, pursuant to 7 N.Y.C.R.R. § 701.8(f), the superintendent would have had

twenty-five calendar days to render a decision and transmit that decision. As a result, it is

plausible that even under normal circumstances, Plaintiff may not have received a response from

the superintendent before his transfer to Five Points twenty-six days later. Moreover, 7

N.Y.C.R.R. § 701.8 is not clear about the timeframe within which an inmate must file an appeal

if the superintendent fails to respond.[24] Assuming that the time limit to appeal the

superintendent's failure to respond is the same as when the superintendent does respond, then

Plaintiff's deadline to file an appeal was December 11, 2016. By December 11, 2016, Plaintiff

had already been at Five Points for six days, which further compounded the obscurity of the

regulations as applicable to an inmate under these circumstances. *Williams*, 829 F.3d at 126.

Further, Defendants argue that because Plaintiff filed another, unrelated grievance while

housed in the Great Meadow SHU and another, unrelated grievance while housed at Five Points,

and both of those grievances were received, that Plaintiff must not have filed a grievance about

---

[24]    "If the Superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his or her grievance to CORC. This is done by filing a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk." 7 N.Y.C.R.R. § 701.8(g). "If the grievant wishes to appeal the Superintendent's response to CORC, he or she must file a Notice of Decision Appeal (Form #2133) with the inmate grievance clerk within seven calendar days of receipt of that response." 7 N.Y.C.R.R. § 701.8(h).

the incident of November 2, 2016, (or any of the alleged follow-up correspondence) because it was not received. However, at best, this argument is circumstantial evidence relevant to Plaintiff's credibility and on a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.[25]

Based on the doctrine set forth in *Williams*, I find that the grievance procedures that were technically available to Plaintiff are so opaque and confusing that they were "practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859.[26] Accordingly, in giving his grievance to

---

[25]    It is well established that credibility issues, which are questions of fact, are inappropriately decided by a court on motion for summary judgment. *Rule v. Brine*, Inc. 85 F.3d 1002, 1011 (2d Cir. 1996).

[26]    I also reject the argument that Plaintiff's allegation that he attempted to file a grievance is insufficient to withstand a motion for summary judgment. In *Hicks v. Adams*, the plaintiff asserted that the prison staff did not transmit his appeals that he attempted to submit, but he failed to state "when he submitted the appeals, to whom, and what, if any, steps he took after the documents were not filed." *Hicks v. Adams*, 692 F. App'x 647, 648 (2d Cir. 2017). The Second Circuit in dismissed the plaintiff's complaint for failure to exhaust his administrative remedies because, *inter alia*, "his conclusory allegation is insufficient to plausibly assert that prison officials thwarted his attempt to appeal." *Hicks*, 692 F. App'x at 648. In contrast, here, I find that Plaintiff failed to exhaust his administrative remedies but that the procedures were so confusing that they were practically speaking incapable of use. Further, Plaintiff identified evidence in the record supporting his assertion that he wrote to the IGRC, Great Meadow superintendent, and CORC inquiring about the status of his grievance, but he did not receive a response to those letters either. (Dkt. No. 83, Attach. 1 at 8-12); *see Hamlett v. Stotler*, 17-CV-0939, 2018 WL 2729263, at *7 (N.D.N.Y. Apr. 27, 2018) (Dancks, M.J.) (holding that the "[p]laintiff in this case, as in *Williams*, does not rest his claim that he gave two grievances to Clinton corrections officers for filing on a mere conclusory assertion to that effect" where the plaintiff "followed up on his September 24, 2014, grievance with an October 24, 2014, letter to Gregory at Clinton and a subsequent letter to her on November 11, 2014, enclosing the two grievances relating to the assault for filing after being informed by her that no grievances has been filed."); *Means v. Olmstead*, 17-CV-0746, 2018 WL 1738216, at *4 (N.D.N.Y. Mar. 5, 2018) (Baxter, M.J.) (denying a motion to dismiss where the inmate plaintiff alleged that he did not receive a response to his grievance so he "wrote to the Superintendent, inquiring about the 'ignored' grievance, but did not receive a response from him.").

the correction officer, Plaintiff exhausted all administrative remedies that were available to him.

42 U.S.C. § 1997e(a); *Williams*, 829 F.3d at 126.[27]

   For all of these reasons, I recommend denying Defendants' motion for summary

judgment.

   **B.    Plaintiff's Motion to Amend**

   After carefully considering the matter, Plaintiff's motion to amend the Complaint is

denied for the reasons set forth in Defendants' opposition memorandum of law.  (Dkt. No. 89.)

   **ACCORDINGLY**, it is

   **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 66) be

**DENIED**; it is further

   **ORDERED** that Plaintiff's motion to amend the complaint (Dkt. No. 88) be **DENIED**; it

is further

   **ORDERED** that in accordance with note 1 of this Order and Report-Recommendation,

the Clerk of the Court is directed to **CORRECT** the caption of the docket sheet in this action so

as to change Defendant "George Murphy, Sgt." to Defendant "George Murphy, Lieutenant."

   Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14)

days within which to file written objections to the foregoing report.  Such objections shall be

filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984

---

[27]      "*To avoid confusion going forward, we recommend that DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and how to appeal a grievance, to which the inmate never received a response, after being transferred*."  *Williams*, 829 F.3d 126-27 (emphasis added).

F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this

Order and Report-Recommendation on the docket of this case and serve a copy upon the parties

in accordance with the local rules.[28]

Dated: January 23, 2020
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[28]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein
in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).